We affirm dismissal of the complaint, but for reasons other than those stated by the motion court. Specifically, we find that the complaint should have been dismissed because plaintiff failed to comply with the 90-day time period specified in General Municipal Law § 50-e, which is a condition precedent to maintaining an action against HHC (see Plummer v New York City Health & Hosps. Corp., 98 NY2d 263, 267 [2002]).
Initially, we note that plaintiff first served a notice of claim without leave of court on June 5, 2006. Plaintiffs mother began her prenatal care with defendant in late 2002, and the infant was born on July 11, 2003. Plaintiffs bill of particulars states that the acts of alleged malpractice occurred between November 27, 2002 and July 16, 2003. Therefore, the time to file a notice of claim without leave of court expired on October 16, 2003, approximately two years and eight months prior to plaintiffs attempted filing of a late notice of claim.
On April 29, 2009, defendant moved for summary judgment dismissing the complaint. That motion raised, for the first time, plaintiffs failure to file a timely notice of claim. On August 17, 2009, plaintiff filed opposition to the motion and cross-moved *467 for an order deeming the notice of claim timely served nunc pro tunc or, in the alternative, granting leave to serve a late notice of claim.
We have repeatedly held that service of a late notice of claim without leave of court is a nullity (see e.g. McGarty v City of New York, 44 AD3d 447, 448 [2007]; Croce v City of New York, 69 AD3d 488 [2010]). Moreover, the failure to seek a court order excusing such lateness within one year and 90 days after accrual of the claim requires dismissal of the action (id.). Therefore, the complaint should have been dismissed on this ground alone.
Contrary to the position of the dissent, however, plaintiff has failed to meet the basic criteria that would warrant the exercise of this Court’s discretion to permit her to file a late notice of claim. General Municipal Law § 50-e (5) gives a court the discretion to grant leave to serve a late notice of claim after considering “whether the public corporation or its attorneys . . . acquired actual knowledge of the essential facts constituting a claim within the time specified in subdivision one ... or within a reasonable time thereafter” (see Caminero v New York City Health & Hosps. Corp. [Bronx Mun. Hosp. Ctr.], 21 AD3d 330, 332 [2005]). “In deciding whether a notice of claim should be deemed timely served under General Municipal Law § 50-e (5), the key factors considered are ‘whether the movant demonstrated a reasonable excuse for the failure to serve the notice of claim within the statutory time frame, whether the municipality acquired actual notice of the essential facts of the claim within 90 days after the claim arose or a reasonable time thereafter, and whether the delay would substantially prejudice the municipality in its defense. Moreover, the presence or absence of any one factor is not determinative’ ” (Velazquez v City of N.Y. Health & Hosps. Corp. [Jacobi Med. Ctr.], 69 AD3d 441, 442 [2010], lv denied, 15 NY3d 711 [2010], quoting Matter of Dubowy v City of New York, 305 AD2d 320, 321 [2003]).
As discussed below, in applying these criteria to this case, we find that plaintiff failed to provide a reasonable excuse for the delay and to establish that HHC had actual notice of the claim.
While we agree with the dissent that the statute is remedial in nature and should be liberally construed (Camacho v City of New York, 187 AD2d 262, 263 [1992]), such construction should not be taken as carte blanche to file a late notice of claim years after the incident which gave rise to the claim occurred. Such an interpretation would frustrate the purpose of the statute which is to protect the municipality from unfounded claims and *468 ensure that it has an adequate opportunity to explore the claim’s merits while information is still readily available (Matter of Porcaro v City of New York, 20 AD3d 357, 357-358 [2005]).
Reasonable Excuse
As the dissent acknowledges, plaintiff failed to offer a reasonable excuse for the delay in moving for leave to serve a late notice of claim. The record shows that the delay is attributable to the fact that plaintiffs mother, while on notice of the infant’s condition, lacked an understanding of the legal basis for the claim, and that she retained her current counsel in July 2005, almost two years after the infant’s birth. However, ignorance of the law is not a reasonable excuse (see Rodriguez v New York City Health & Hosps. Corp. [Jacobi Med. Ctr.], 78 AD3d 538, 538-539 [2010], lv denied 17 NY3d 718 [2011]; Harris v City of New York, 297 AD2d 473, 473 [2002], lv denied 99 NY2d 503 [2002]). Significantly, it must be noted that counsel waited almost a year after being retained to file a notice of claim, albeit without leave of the court. Although, as the dissent points out, this factor, standing alone, does not require denial of the cross motion, it does not stand in plaintiffs favor.
Actual Knowledge of the Essential Facts
Actual knowledge of the essential facts is an important factor in determining whether to grant an extension and should be accorded great weight (Matter of Kaur v New York City Health & Hosps. Corp., 82 AD3d 891, 892 [2011]).
Contrary to the dissent’s argument, plaintiff failed to demonstrate that defendant acquired actual notice of the facts constituting the claim from the medical record, as “[t]he record alone did not put defendant on notice of alleged malpractice that might years later give rise to another condition” (Rodriguez, 78 AD3d at 539; Velazquez, 69 AD3d at 442).
Here, although plaintiffs experts seize on entries discussing “fetal distress” and view the delivery and the natal intensive care unit records with the hindsight of later developed medical conditions, they fail to address the simple fact that, from all appearances, the infant was a well baby post-delivery. Her Apgar scores were eight at one minute, and nine at five minutes, with a perfect score being 10, and a normal range of 8-10. While the infant did experience respiratory distress when her oxygen saturation level decreased to 85%, after staff administered oxygen, the levels improved in short order to 92% and, afterwards to 100%. Moreover, the fetal heart rate fluctuations were not so dramatic as to give an indication that something *469 was amiss. While in natal ICU to rule out sepsis, the infant was described as “alert, responsive, normal muscle tone, Moro reflex symmetric, strong suck, strong cry” and the chart noted that “respiratory distress subsided.” At discharge, the infant was again described as alert and responsive, strong grasp and demonstrated no apparent issues. In fact, during well-baby checkups in July and September 2003, the baby was doing well and meeting developmental milestones. The records from those visits noted a genetic issue that was corrected and was unrelated to her later problems.
Simply put, despite plaintiffs experts’ attempts to read into the records issues that developed beyond the time frame set forth in plaintiffs bill of particulars, the records do not, on their face, demonstrate a failure to provide proper prenatal and labor care, or that defendant departed from good and accepted medical practice during delivery (see Perez v New York City Health & Hosps. Corp., 81 AD3d 448 [2011]; Matter of Kelley v New York City Health & Hosps. Corp., 76 AD3d 824, 828 [2010]).
“Merely having or creating hospital records, without more, does not establish actual knowledge of a potential injury where the records do not evince that the medical staff, by its acts or omissions, inflicted any injury on plaintiff during the birth process” (Williams v Nassau County Med. Ctr., 6 NY3d 531, 537 [2006]).
Although the dissent argues that Williams is distinguishable from the present case, its facts are quite similar. There, plaintiff claimed his epilepsy and developmental difficulties were the result of malpractice committed by doctors and staff during his birth in September 1993 (id. at 535-536). Ten years later, on September 5, 2003, plaintiffs counsel sent defendants a notice of claim (id. at 536). There, as here, there were difficulties encountered during the delivery. The Apgar scores of the infants in both cases were identical (see id.). The experts in both cases claimed that the records, on their face, gave the defendants actual notice of the essential facts constituting malpractice. Also of note is the fact that subsequent medical examinations did not reveal any abnormalities until years after the incidents giving rise to the claimed malpractice.
In affirming the dismissal of the complaint in Williams, the Court of Appeals made the following observation: “The hospital’s records reveal that the delivery was difficult, but that when it was over there was scant reason to identify or predict any lasting harm to the child, let alone a developmental disorder or epilepsy. The infant’s Apgar scores were satisfactory, and even two years later, his EEC was normal. Under these circum *470 stances defendants could well have concluded that when plaintiff left the hospital there was nothing wrong with him beyond a broken clavicle” (id. at 537). The Court when on to hold: “The relevant inquiry is whether the hospital had actual knowledge of the facts — as opposed to the legal theory — underlying the claim. Where . . . there is little to suggest injury attributable to malpractice during delivery, comprehending or recording the facts surrounding the delivery cannot equate to knowledge of facts underlying a claim” (id). Such is the situation here.
The dissent relies on Perez (81 AD3d 448), “a case factually and procedurally similar to this case,” for the proposition that the medical records “on their face, evince[ jdefendant’s failure to provide the infant’s mother with proper prenatal and labor care” (id.). However, the only similarity between Perez and this case lies in the fact that both plaintiffs provided affirmations from experts that incorporated records and reports made well beyond the time frame of the claimed malpractice. Factually, the present case could not be more different than Perez.
In Perez, the medical records before the court were replete with heartbeat irregularities and variable decelerations “denoting compression of head or umbilical cord.” There was a noted fetal intestinal discharge which was another indication of severe in útero problems. Additionally, the records show that the fetus’s growth rate was below normal. The baby was born with an Apgar score of six, below the normal score, and was of small birth weight. Significantly, these records also revealed that the infant was born with respiratory distress, as well as possible ischemic brain injury due to blood loss from mechanical obstruction of blood vessels. While in the natal ICU, the records revealed, among other things, that the infant demonstrated diminished muscle tone, poor oxygen saturation which did not improve, a rapid heartbeat, concave abdomen, diaphragm abnormality diagnosed as possibly chromosomal, a short thorax, decreased muscle mass, and, most significantly, evident developmental delay. The infant spent his first 20 months of life on a ventilator and was transferred to a specialized facility for various forms of therapy. We found, not surprisingly, that under these circumstances, the medical records did in fact apprise defendants of the essential facts underlying the claimed malpractice (81 AD3d at 449).
Although defendants in Perez did not submit expert affidavits in response to those submitted by plaintiff (id.), the case before us stands in a different procedural posture. Perez involved a motion to file a late notice of claim. Here, the application was made by a cross motion and plaintiffs experts were essentially *471 responding to the affidavits of defendant’s experts which were submitted in support of defendant’s motion for summary judgment.
The dissent argues at great length that the medical records, as interpreted with the benefit of hindsight by plaintiffs expert, clearly showed departures from accepted medical practice and hence, gave defendant actual notice of the alleged malpractice. This fails to take into account the affidavits of defendant’s experts which utilized those same records to support their conclusion that there was no departure from accepted medical procedures. In essence, the dissent is making a credibility determination that malpractice did, in fact, occur and that defendant was aware of such malpractice. This sidesteps the threshold issue in this case, i.e., whether plaintiff meets the criteria that would permit the filing of a late notice of claim (see Caminero, 21 AD3d at 332; Velazquez, 69 AD3d at 442).
Simply put, the medical records in this case do not rise to the level required for a finding that defendant’s own records “equate to knowledge of facts underlying a claim” (Williams, 6 NY3d at 537).
Substantial Prejudice
As previously discussed, defendant did not have actual knowledge of the facts underlying plaintiffs claims. Proof of actual knowledge, or lack thereof, “is an important factor in determining whether the defendant is substantially prejudiced by such a delay” (Williams, 6 NY3d at 539).
However, defendant has failed to show substantial prejudice beyond claiming unavailability of witnesses. No averment has been made that any witness is actually unavailable. Beyond a general claim that the delay has created prejudice, defendants have not shown this to be the case.
Infancy
Finally, as the dissent concedes, plaintiff’s infancy carries little weight, because there is no connection between the infancy and the delay in moving to file the late notice of claim (see Williams, 6 NY3d at 538).
In applying all the factors which must be considered in determining whether permitting service of a late notice of claim would be a provident exercise of discretion, we conclude that plaintiff failed to meet the overall requirements and the complaint must therefore be dismissed.
In light of our decision, we need not address plaintiff’s *472 remaining arguments. Concur — Tom, J.E, Friedman, Sweeny and DeGrasse, JJ. Moskowitz, J., dissents in a memorandum as follows: